**Reversed and Remanded and Opinion filed April 9, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00245-CR

**JEREMY DESHAWN DUGAR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 1407238**

## OPINION

In this appeal from a conviction for murder, the question is whether the trial court reversibly erred when it omitted an instruction on the law of self-defense. The trial court ruled that appellant was not entitled to the instruction because he shot and killed an innocent bystander. We conclude that the trial court's reasoning was erroneous, that the instruction should have been given, and that the omission of the instruction resulted in some harm. We therefore reverse the trial court's judgment and remand for a new trial.

# BACKGROUND

On the evening of May 2, 2010, appellant drove to a farewell party for Edrick "Pop" Cole, who was celebrating one of his last nights of freedom before turning himself in for a period of incarceration. Appellant disapproved of Pop and his lifestyle, but appellant chose to attend the party because he was Pop's brother-in-law.

The party was located in the parking lot of an abandoned K-mart. When appellant arrived, more than a hundred people were in attendance and the crowd was acting disorderly. Police were eventually called to the scene and told the crowd to disperse because they did not have a valid permit.

Pop encouraged everyone to move the party to a nearby park. Appellant's two brothers were at the party and they all agreed to drive to the park in their own separate vehicles. The plan was to follow a black Dodge Charger, in which Pop was believed to be a passenger. As they were leaving the K-mart, some jostling occurred near the exits and several drivers tried to maneuver their vehicles in front of each other. Appellant and one of his brothers happened to cut off a black Cadillac, which then ignited a fit of road rage.

Appellant was chased down on a main thoroughfare by the Cadillac and a red Ford Focus, which had also been at the farewell party. The Cadillac moved into the left-hand lane, adjacent to appellant, and the Focus moved into the shoulder on appellant's right side. Appellant was effectively "sandwiched" between the two vehicles. The situation was made especially tense because appellant was driving a Jeep Wrangler with the top down, and his wife was riding as a passenger. With the Jeep's open cover, appellant could hear that the driver of the Cadillac was yelling at him.

At some point, appellant hit the Focus—unintentionally, he claimed—causing the Focus to spin out of control and collide with a green Ford Explorer. The driver of the Explorer had no prior affiliation with Pop or any of the parties involved with this case.

The driver of the Charger, who thought that he was leading a group of cars, saw that a "big wreck" had happened behind him. Suspecting that some of the affected cars were from his caravan, the driver of the Charger pulled into the empty parking lot of a local employment office. Many cars followed him into the parking lot, including the Cadillac, the Focus, and the Explorer. Appellant and his two brothers drove away, but they circled back after a few minutes, believing that Pop was still in the Charger.

When appellant entered the parking lot, he estimated that fifteen or sixteen people were standing outside of their vehicles. Pop was not among the crowd, which by then was quite upset. Appellant described the crowd as "vicious" and "ferocious." People were arguing, using derogatory words, and generally accusing appellant of having caused the accident.

The accounts vary as to whether appellant and his brothers stayed inside of their vehicles, but it is clear that tensions continued to escalate. Appellant saw that one man in the crowd had a handgun, though he was not pointing it at anyone. Appellant cracked open his door and exhibited a handgun of his own, but he did not point it at anyone either. Another man in the crowd saw appellant's weapon and responded, "Oh, well we got weapons too!"

Sensing hostility, appellant thought that some members of the crowd were preparing to rob him or carjack his brothers for the valuable rims on their vehicles. Appellant also suspected that the arguments over the accident were going nowhere. Believing that he was ultimately faultless with respect to the accident, appellant

3

told his brothers that they should all leave. The three of them then drove away in single file, with appellant at the rear.

As he was exiting the parking lot, appellant turned his head and saw that members of the crowd were pursuing him on foot. Appellant believed that his pursuers intended to cause him harm, so he grabbed his weapon, aimed above the crowd, and fired two or three times, hoping to scare the crowd away. Appellant was quickly met with return fire from a shooter in the crowd, who was later identified as Justin Harris. Appellant kept driving and did not return.

One of appellant's shots hit the complainant, Tevin Williams, who had previously been a passenger in the Cadillac. The bullet entered through the top part of the complainant's chest, traveled through his right lung in a downward direction, and exited through his mid-back. The trajectory was fatal. The medical examiner opined that the complainant may have been bending over at the waist when he was struck.

Appellant learned of the complainant's death shortly after the shooting, but he never reported the incident to authorities or surrendered himself for questioning. Several days later, he was tracked down by police and arrested for murder.

During his custodial interrogation, appellant gave conflicting versions of the events. He initially denied that he owned a gun or had fired at the complainant, but when police raised the question of self-defense, appellant confessed that he had discharged several rounds in the direction of the crowd. Appellant explained that he had felt threatened at the time of the shooting because members of the crowd were armed.

The State's witnesses testified at trial that the complainant was an aspiring young rapper who was scheduled to perform at Pop's farewell party. Witnesses

4

said that the complainant was not armed at the time of the shooting and had played no part in the arguments after the accident. One witness specifically reported that the complainant had never acted in a threatening manner, and that he had been quiet the entire time.

The defense witnesses included one of appellant's brothers, who claimed that there were several guns in the crowd. The brother also testified that he could see the crowd coming towards him as he was trying to leave. A passenger in the brother's car added to this testimony by saying, "They were all after us when we were out of the parking lot."

Appellant testified that he fired the first shots, even though he did not believe that a gun was pointed at him at the time of the shooting. Appellant explained, however, that he felt vulnerable because he and his wife were exposed, and he was in a high state of anxiety. Appellant stated that he only intended to scare the crowd, not kill anybody.

The trial court drafted a charge that originally included a self-defense instruction, but during the charge conference, the State objected that appellant was not entitled to the instruction.[1] The State argued that there was no evidence to support the instruction because appellant did not face an immediate threat from the complainant. The State also argued that there was a statutory bar to self-defense because the complainant was an innocent bystander. The latter argument invoked section 9.05 of the Texas Penal Code, which provides that self-defense is not available in a prosecution for the reckless injury or killing of an innocent third party.

---

[1] The original draft of the trial court's charge is not in our record, but we can deduce that it contained a self-defense instruction because appellant submitted a written request during the charge conference to "edit" the court's instruction on self-defense.

Appellant responded that, under the circumstances, he was allowed to use either deadly force or the threat of deadly force, and that the evidence was therefore sufficient to support a self-defense instruction. Appellant also argued that Section 9.05 did not preclude the giving of the instruction. Appellant explained that the complainant was a member of a larger group, and because that group had intimidated appellant, there was at least a fact question as to whether the complainant was an innocent third party. Appellant also explained that Section 9.05 applied only to cases involving reckless killings, meaning that he would still be justified by acting in self-defense if recklessness were not shown. Appellant accordingly suggested that recklessness was another fact question for the jury to decide.

The trial court determined that "there's certainly nothing there to indicate that [the complainant] was anything but an innocent bystander." Without commenting on whether appellant had killed the complainant recklessly, the court accepted the State's argument under Section 9.05 and held that appellant was not entitled to a self-defense instruction. The court deleted the instruction from its original draft and submitted a final charge that contained no law regarding a justification defense.

## ANALYSIS

We review a complaint of jury-charge error under a two-step process, considering first whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error does exist, we then analyze that error for harm under the procedural framework of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

**I.     Did the trial court err by omitting a self-defense instruction?**

The trial court did not expressly rule on the State's first charge objection that the evidence failed to raise the issue of self-defense. Instead, the court concluded that the complainant was an innocent bystander as a matter of law, and based on that conclusion, the court held that appellant should not receive a self-defense instruction because of Section 9.05.

The State asserts on appeal that the trial court made the correct decision by omitting the instruction from the charge, regardless of which objection it actually sustained. We begin by addressing the State's evidentiary objection, because if self-defense was not raised by the evidence, then our error analysis is over, and there is no need to determine whether Section 9.05 had any preclusive effect on the giving of a self-defense instruction.

**A.     The evidence raised the issue of self-defense.**

The trial court must give a requested instruction on every defensive issue that is raised by the evidence. *See Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). A defensive issue is raised by the evidence if there is some evidence, regardless of its source, on each element of a defense that, if believed by the jury, would support a rational inference that the element is true. *See Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

When deciding whether a defensive issue has been raised by the evidence, a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts that have been proven. *Id.* at 658. The defendant is entitled to an instruction on a defense when there is legally sufficient evidence to raise the defense, regardless of whether the evidence supporting the defense is weak or contradicted, and even if the trial court

is of the opinion that the evidence is not credible. *Id.* Whether the record contains such evidence is a question of law, which means that we do not apply the usual rule of appellate deference to the trial court's ruling. *Id.* "Quite the reverse, we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

A person is justified in using deadly force against another when and to the extent that he reasonably believes that deadly force is immediately necessary to protect himself from the other's use or attempted use of unlawful deadly force. *See* Tex. Penal Code § 9.32. The State argues on appeal, as it did at trial, that there is no evidence to support a self-defense instruction because the record shows that appellant did not face an immediate threat from the complainant individually. We do not take such a narrow view of the right to self-defense.

When there is evidence, viewed from the standpoint of the defendant, that he was in danger of an unlawful attack or a threatened attack at the hands of more than one assailant, the trial court should instruct the jury that the defendant had a right to protect himself against the multiple assailants. *See Frank v. State*, 688 S.W.2d 863, 868 (Tex. Crim. App. 1985); *Wilson v. State*, 140 Tex. Crim. 424, 429, 145 S.W.2d 890, 893 (1940). The point is well-demonstrated by the case of *Sanders v. State*, 632 S.W.2d 346 (Tex. Crim. App. [Panel Op.] 1982). There, the defendant was attacked inside a beer joint, and then pursued outside by a group of several men. *Id.* at 346. The defendant obtained a rifle and, from a distance of more than thirty feet, shot towards the group to scare the men away. *Id.* at 347. One of the shots struck the decedent, a man who had not attacked the defendant. *Id.* at 346. The trial court instructed the jury that it could acquit on the grounds of self-defense, but only if the jury found that the defendant reasonably believed that the decedent—and only the decedent—was using or attempting to use unlawful deadly

force. *Id.* at 347. The Court of Criminal Appeals held that the charge was too restrictive, and that the defendant was entitled to a self-defense instruction as it relates to multiple assailants. *Id.* at 348.

In this case, appellant testified that he was being pursued by a group of a men, just like the defendant in *Sanders*. Appellant also testified that the group was "vicious" and "ferocious," and he believed the men were out to cause him harm. If appellant reasonably believed that deadly force was immediately necessary to protect himself from the use or attempted use of unlawful deadly force from the group at large, then the evidence raised the issue of self-defense, regardless of the complainant's individual actions. *See Frank*, 688 S.W.2d at 868; *Sanders*, 632 S.W.2d at 348; *see also Dickey v. State*, 22 S.W.3d 490, 493 (Tex. Crim. App. 1999) (Keller, J., concurring) (noting that a person would be entitled to use deadly force in self-defense against another, even if the other was unarmed and made no threatening moves, provided that the other was a party to a hostile group).

The State argues next that, even when the actions of the group are examined, the evidence is still insufficient to raise the issue of self-defense. The State emphasizes that there is no evidence that any member of the group verbally threatened appellant with his life. The State also points out that, before the shooting, there was no history of physical abuse between appellant and any member of the group, and no one had actually used or attempted to use deadly force against appellant. The State seems to contend that an actual danger is required before a person may act in self-defense. But again, that view is too narrow.

"A person has the right to defend himself from apparent danger to the same extent as he would if the danger were real." *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). Thus, under certain circumstances, a person may use

9

deadly force against another, even if the other was not actually using or attempting to use unlawful deadly force. *See Jones v. State*, 544 S.W.2d 139, 142 (Tex. Crim. App. 1976); *see also Burke v. State*, 652 S.W.2d 788, 790 (Tex. Crim. App. 1983) (noting that a person is not required to wait until he is actually attacked before he may lawfully protect himself), *superseded by rule and on other grounds as stated in Whiting v. State*, 797 S.W.2d 45 (Tex. Crim. App. 1990). The only requirement is that the person must be justified by acting against the danger "as he reasonably apprehends it." *See Hamel*, 916 S.W.2d at 493; *see also Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984) (noting that the defendant would be entitled to a self-defense instruction if he reasonably believed that his brother was using or attempting to use unlawful force, and it was "immaterial" that the defendant was not in fact attacked by his brother).

The reasonableness of a person's belief that force is immediately necessary is viewed from the person's standpoint at the time that he acted. *See Jones*, 544 S.W.2d at 142; *Kolliner v. State*, 516 S.W.2d 671, 674 (Tex. Crim. App. 1974). Here, the facts showed that appellant was placed in a hostile situation in the moments before the shooting. Two cars had chased and "sandwiched" him on the road, which was highly aggressive behavior. During the chase, appellant heard that the driver of one of the cars was yelling at him, and the aggressive driving contributed to an accident involving multiple vehicles.

After the accident, the arguments escalated in a parking lot. Many people exited their cars, and according to appellant, they were "vicious," "ferocious," and blaming him for the accident. The testimony supported a finding that the crowd was akin to an angry mob. Appellant saw that at least one person in the crowd had a gun, and he heard a statement that more weapons were present.

Appellant decided to leave the parking lot, without regard to the crowd's belief that he was responsible for the accident. As he drove away, appellant saw that members of the crowd were pursuing him on foot. Even though he did not specifically see a gun pointed at him, appellant could have reasonably believed that the crowd was pursuing him for a sinister purpose: to shoot him while he was exposed and still within range.

Because appellant gave more than one story of the events, his claim of self-defense may not strike all as especially strong or convincing. However, a defense can be raised even when its supporting evidence has been impeached or contradicted. *See Smith v. State*, 676 S.W.2d 584, 586–87 (Tex. Crim. App. 1984).

Appellant testified that, in the heat of the moment, he was afraid of being harmed. The fact that a shooter in the crowd was able to quickly return fire suggests that a gun may have been at the ready, which lends some credibility to the belief that harm was imminent. We conclude that it was reasonable for appellant to apprehend an immediate danger under the circumstances, and that the evidence was therefore sufficient to raise the issue of self-defense. *See Sanders*, 632 S.W.2d at 348.

### B. Section 9.05 did not preclude a self-defense instruction.

We now consider what effect, if any, that Section 9.05 has on the giving of a self-defense instruction. The statute provides as follows:

> Even though an actor is justified under this chapter in threatening or using force or deadly force against another, if in doing so he also recklessly injures or kills an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of the innocent third person.

Tex. Penal Code § 9.05.

The State argued that appellant could not receive a self-defense instruction because of Section 9.05, and the trial court agreed, having concluded as a matter of law that the complainant was an innocent bystander. The trial court's conclusion was erroneous for at least two reasons.

First, as appellant argued at trial, there was at least a fact question as to whether the complainant was an innocent bystander. The evidence showed that the complainant was a passenger in the same Cadillac that had aggressively chased appellant down the road. After the accident, the complainant exited the Cadillac and joined the larger crowd that appellant described as "vicious" and "ferocious." The State's witnesses testified that the complainant was quiet and never made any threats, but the defense witnesses testified that the crowd as a whole was hostile. One defense witness specifically testified that the entire crowd was in pursuit of appellant as he was leaving the parking lot: "They were *all* after us." Thus, there was a conflict in the evidence. The jury could have found that the complainant was pursuing appellant on foot, or that he was at least a party to an attempted attack.[2]

Second, even if we assumed that the complainant was an innocent third person, his bystander status alone would not preclude the giving of a self-defense instruction. Section 9.05 states that a justification defense is unavailable when the actor "recklessly" injures or kills an innocent third person. Whether a person acts recklessly is a determination that can be made only by the finder of fact, which in this case was the jury. *See Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003) ("[I]n homicide prosecutions, the defendant's state of mind is a question of fact that must be determined by the jury."). It necessarily follows that the trial

---

[2] The State points out that the complainant was found without a weapon on his person and that his hands tested negative for the presence of gunshot residue. But the defense witnesses testified that there were multiple guns in the crowd. Furthermore, one police detective testified that he was never able to locate the Focus or its occupants, which raises the suggestion that the crime scene had not been preserved by the time police arrived.

court could not make a preliminary determination that appellant shot the complainant recklessly, and was therefore ineligible to claim self-defense.

The State contends that we must follow the decisions in *Banks v. State*, 955 S.W.2d 116 (Tex. App.—Fort Worth 1997, no pet.) and *Vidal v. State*, 418 S.W.3d 907 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). In both cases, Section 9.05 was cited as authority for denying an instruction on a justification defense. *See Banks*, 955 S.W.2d at 118; *Vidal*, 418 S.W.3d at 911.

*Banks* is not binding on this court, and *Vidal* is distinguishable on the facts. In *Vidal*, the defendant was charged with reckless injury to a child, and there was no dispute that the child was an innocent third person. *See Vidal*, 418 S.W.3d at 911. In this case, there was at least a fact question regarding the complainant's bystander status, and appellant was charged with more than just reckless conduct. The jury was asked to decide whether appellant acted intentionally, knowingly, or recklessly. Moreover, the Court of Criminal Appeals has held that the jury may be instructed on the law of self-defense, even when the defendant is charged with a crime in which the culpable mental state is recklessness. *See Alonzo v. State*, 353 S.W.3d 778, 782 (Tex. Crim. App. 2011).

During the charge conference, appellant requested an instruction on self-defense that included a statement under Section 9.05 that the jury should convict him if he recklessly used deadly force against the complainant.[3] We conclude that appellant was entitled to the instruction, and that the trial court erred by refusing to give it.

---

[3] The requested instruction provided as follows: "Furthermore, if you find that in using or threatening to use force or deadly force in self defense or defense of a third person, Jeremy Desha[w]n Dugar recklessly injured or killed an innocent third person, then you should find against the defendant on the issue of self defense and on the issue of defense of a third person."

## II.	Did the trial court's error result in some harm?

Not all jury-charge errors require reversal. *See Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). If the defendant did not object to the erroneous charge, he must show that the error was "fundamental" and that he suffered "egregious harm" before the judgment may be reversed. *Id.* Conversely, if the defendant did object at trial, as appellant did here, then he will obtain relief if the record shows that he suffered "some harm." *Id.*

When applying the "some harm" standard, a reviewing court must determine whether the defendant "suffered some actual, rather than merely theoretical, harm from the error." *Id.* We consider several factors: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) any other information that is relevant and contained within the record. *Id.*

As stated above, the charge did not instruct the jury on any justification defenses. The jury was asked to determine only whether appellant was guilty of felony murder. The charge gave two alternative theories on which the jury could convict, and the theories stated as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 2nd day of May, 2010, in Harris County, Texas, the defendant, Jeremy Deshawn Dugar, did then and there unlawfully, commit the felony offense of aggravated assault by intentionally, knowingly or recklessly causing serious bodily injury to Tevin Williams by firing a firearm into the vicinity of a group of people, and while in the course of and furtherance of the commission of said offense did commit an act clearly dangerous to human life, to-wit: firing a deadly weapon, namely a firearm, into the vicinity of a group of people and did thereby cause the death of Tevin Williams; or
>
> If you find from the evidence beyond a reasonable doubt that on or about the 2nd day of May, 2010, in Harris County, Texas, the defendant, Jeremy Deshawn Dugar, did then and there unlawfully, commit the felony offense of deadly conduct by intentionally,

14

knowingly, or recklessly discharging a firearm at or in the direction of Tevin Williams, and while in the course of and furtherance of the commission of said offense, did commit an act clearly dangerous to human life, to-wit: by firing a deadly weapon, namely a firearm, into the vicinity of a group of people and did thereby cause the death of Tevin Williams, then you will find the defendant guilty of felony murder, as charged in the indictment.

The evidence left little doubt that appellant committed the *actus reus*. The bullet that struck the complainant was consistent with a bullet from appellant's firearm. And, of course, appellant admitted that he discharged his weapon in the direction of the group of people where the complainant was ultimately shot.

Appellant freely gave his testimony in anticipation that he would receive a self-defense instruction. His entire defense was built around that theory, which he made aware to the jury before any witnesses had taken the stand. During voir dire, defense counsel questioned the venire panel about self-defense, and even elicited stories from the panel about how some had been involved in bar fights or other personal attacks. And during opening statements, defense counsel clearly signaled that self-defense was the ultimate issue in the case. Counsel began her opening statement as follows: "Good morning, ladies and gentlemen. Jeremy Dugar is not guilty of murder. He did not know the decedent in this case. What took place is a tragic accident that was in the course of justified self-defense."

After the charge conference, the State was first to present its closing arguments, and the first legal issue that the prosecutor addressed was the omission of a self-defense instruction. The prosecutor told the jury:

You are not going to see self-defense in this jury charge. You didn't just hear the Judge read it and there is a reason for that. Because it is not appropriate. Because Tevin Williams was an innocent bystander. Because his presence there didn't create the excuse for unlawful [sic]

deadly force. Because the defendant was not entitled to self-defense against Tevin Williams.

Defense counsel was left to argue in her closing statements that appellant did not act with the requisite *mens rea*. Counsel argued, for instance, that appellant did not intend to shoot the complainant; rather, appellant intended only to scare the group, and he was not aware that his bullets would strike anyone in particular. These arguments provided no answer to the portion of the charge that asked the more general question of whether appellant intentionally or knowingly "discharg[ed] a firearm at or in the direction of" the complainant, a fact which was conclusively established by appellant's own testimony. The only answer that appellant could have provided to that portion of the charge was a justification defense, but in this case, none was allowed.[4]

The Court of Criminal Appeals has recognized that the erroneous omission of a confession-and-avoidance defense, such as self-defense, "is generally harmful because its omission leaves the jury without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense." *See Cornet v. State*, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013). That appears to have been what happened here. Appellant pitched this case as a question of self-defense, and he admitted to the conduct that formed the basis of the offense in order to receive a self-defense instruction. When that instruction was taken away from the jury, appellant was left without his only defensive theory, making his conviction a virtual inevitability.

We cannot know for certain whether the jury would have accepted appellant's claim of self-defense had that issue been submitted. As we indicated

---

[4] Defense counsel also responded to the charge of recklessness, but the argument essentially consisted of just a definition of that mental state. Counsel quickly shifted her discussion to omissions in the State's case, like the absence of scene diagrams and videos.

16

above, appellant initially denied to police that he was involved in the shooting, which casts doubt on his defensive theory. Nevertheless, appellant testified to facts that, if believed, raised the issue of self-defense, and it is not for this court to decide whether that claim was credible.

The evidence shows an unfortunate sequence of events in which there seems to have been some level of aggression directed towards appellant. The jury appeared to sympathize with him. During the punishment stage, appellant requested a five-year sentence, the minimum for a felony in the first degree. The State sought no less than thirty years. The jury sentenced appellant to only twelve years, which suggests a belief that he was not significantly blameworthy. *Cf. State v. Warden*, No. PD-1502-10, 2011 WL 1157562, at *1 (Tex. Crim. App. Feb. 9, 2011, not designated for publication) (Keller, P.J., dissenting from the refusal of a petition for discretionary for review) (opining that the erroneous omission of a self-defense instruction was probably harmless because the jury assessed punishment at sixty-five years' imprisonment, indicating a belief that the defendant was significantly blameworthy).

To summarize, appellant had only a single defense, and it was a justification defense that required him to first prove the facts that comprised the charged offense. When the trial court denied an instruction on appellant's sole defensive theory, the jury was given a charge that contained no vehicle with which it could acquit. The evidence showed that appellant was entitled to an instruction on self-defense, and there is at least some indication that the jury found that appellant was not significantly blameworthy. Having considered all of the pertinent factors, we conclude that the trial court's error resulted in some harm, not merely theoretical harm. *See Carmen v. State*, 276 S.W.3d 538, 546–47 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (concluding that the erroneous omission of a self-defense

instruction resulted in some harm); *Johnson v. State*, 271 S.W.3d 359, 368–69 (Tex. App.—Beaumont 2008, pet. ref'd) (same); *Guilbeau v. State*, 193 S.W.3d 156, 161 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (same); *VanBrackle v. State*, 179 S.W.3d 708, 716–17 (Tex. App.—Austin 2005, no pet.) (same).

## CONCLUSION

The trial court's judgment is reversed and the case is remanded for a new trial.

/s/    Tracy Christopher
Justice

Panel consists of Justices Christopher, Donovan, and Wise.
Publish — Tex. R. App. P. 47.2(b).

18