

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0458-23

**BETHANY GRACE MACIEL, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

## ON APPELLANT'S AND STATE'S
## PETITION FOR DISCRETIONARY REVIEW
## FROM THE THIRTEENTH COURT OF APPEALS
## BRAZOS COUNTY

**MCCLURE, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, NEWELL, YEARY, WALKER, and SLAUGHTER, JJ., joined. KEEL, J., concurred. KELLER, P.J., dissented.**

This case addresses whether a trial court's omission of a necessity defensive jury instruction was harmless error. Following Appellant's conviction, the court of appeals affirmed the trial court's decision to deny the necessity charge, but this Court reversed, holding that Appellant was entitled to the instruction because the jury could reasonably

infer from her testimony that she had been operating the vehicle and did so because she believed it was immediately necessary to avoid imminent danger (and that belief was reasonable). On remand to consider harm, the court of appeals, in a split decision, found the error was harmless. We granted review to decide whether the court of appeals' conclusion was in error. Based on our independent review of the record, we find that the trial court's failure to give a necessity instruction caused Appellant "some harm." Accordingly, we reverse the court of appeals' judgment.

## I.      Factual Background

On January 31, 2016, Appellant went with her brother and her sister-in-law to Northgate, a bar and club district in College Station. While at Northgate, Appellant had several alcoholic beverages, drinking to the point that she did not feel safe to drive her vehicle back to her apartment. Appellant called her friend Kendyll Holmes for a sober ride because she knew she was too intoxicated to drive home. She testified that she intended to let Holmes take her home but did not get a ride with her because her brother was not ready to leave Northgate when Holmes arrived. As a result, Appellant's brother drove her vehicle from the Northgate area parking garage to where it was later found stopped some two miles away, while she rode in the passenger seat and her sister-in-law rode in the backseat.

As to how Appellant came to be in the driver's seat of the vehicle, Appellant testified that her brother had become physically sick and had stopped the vehicle abruptly in the middle of the road. After her brother vomited, Appellant switched seats with him before attempting to move the vehicle to a nearby parking lot. Although Appellant was intoxicated

and did not feel safe to drive, she testified that she had "to try and move the car out of the middle of the road to the closest parking lot." However, Appellant could not get the car to move, possibly because she did not realize the parking brake was on. She testified, "I couldn't get the car to move, so I wasn't driving. I don't think I was operating it."

Texas A&M Police Officer Phillip Shaw observed Appellant's vehicle stopped in a lane of traffic with smoke coming from the hood. When the officer approached, Appellant was in the driver's seat accompanied by two passengers. Although the officer never saw Appellant move the vehicle, it was still running when he approached.

Appellant was charged with misdemeanor driving while intoxicated ("DWI"). She pleaded not guilty. Appellant's defensive theory was that she was not trying to drive her car home after it had stopped in the road, but rather, she was trying to "get them off the road, get the car to safety. As you've heard, that's a dangerous situation to be in." During the defense's opening statement, defense counsel told the jury, "What [Appellant] didn't do was make the mistake of trying to drive the vehicle home, trying to operate the vehicle beyond getting it off the road out of danger."

Appellant requested a necessity instruction because she argued that she was trying to move the car from the road that night. The trial court denied her request. During closing, perhaps because he knew the jury wouldn't be instructed on necessity, counsel argued that the State failed to prove Appellant operated the vehicle. If the jury did believe Appellant operated it, counsel told the jury to consider her motive: "She wasn't trying to operate the

vehicle to drive it. She was trying to operate the vehicle to get it off the road. That matters. It should matter. It does matter." Appellant was found guilty.

On appeal, Appellant argued that the trial court erred in denying her request for a necessity instruction. The court of appeals affirmed and held that because Appellant did not admit to the underlying DWI, she wasn't entitled to the instruction. *Maciel v. State*, 2020 Tex. App. LEXIS 5391, *5 (Corpus Christi July 16, 2020, pet. granted) (*Maciel I*). This Court reversed, finding that Appellant raised necessity, "essentially admitt[ing] to every element of the offense charged." *Maciel v. State*, 631 S.W.3d 721, 725 (Tex. Crim. App. 2021)(*Maciel* II). This Court remanded to the court of appeals for a harm analysis.

## II.     COURT OF APPEALS HARM ANALYSIS

On remand, the Thirteenth Court of Appeals held that there was no harm in the trial court's failure to give a necessity instruction. As part of its analysis to determine whether Appellant's necessity conduct was justified, the court first evaluated whether Appellant satisfied the two-prong test from Section 9.22 of the Texas Penal Code. The court then focused its harm analysis on the arguments of counsel and other relevant information in the record.

First, the court noted that to prevail on a necessity defense, a defendant must present evidence that the defendant reasonably believed the conduct was "immediately necessary to avoid imminent harm." Tex. Pen. Code § 9.22(1). The necessity statute also requires the desirability and urgency of avoiding the harm to "clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the

conduct." Tex. Pen. Code § 9.22(2). The court reasoned that, because Appellant was intoxicated, Appellant did not have a "reasonable" belief that her conduct was immediately necessary to avoid imminent harm.

Second, the court held that there was no evidence of a specific imminent harm. Citing *Braughton v. State*, the court of appeals argued that, when evaluating harm, the evidence must present something more than merely a generalized fear of harm, but instead, there must be some plausible basis of the necessity defense. 569 S.W.3d 592, 616 (Tex. Crim. App. 2018). When viewing the evidence in this case in totality, the court concluded that the evidence contradicts the plausibility of driving while intoxicated under these circumstances when there is a lack of specific and imminent harm.

Third, the court notes that Appellant did not present a justification defense in her closing argument. Instead, the court observed that, during closing argument, Appellant appeared to disavow necessity. Because the parties did not argue necessity to the jury in closing arguments, the court concluded this factor weighs against a finding of harm.

And finally, the court looked at other relevant information in the record and noted that Appellant failed to cite to portions of *voir dire* where she questioned the jury about necessity; that Appellant only presented a "generalized fear of harm" which is insufficient to raise the issue of imminent harm; that neither party discussed whether her conduct was immediately necessary to avoid imminent harm so there is no other evidence to gauge actual harm; that there is no evidence Appellant operated the vehicle due to a split-second decision and she did not suggest that she did so to avoid harm; that the jury could have still

acquitted since Appellant rejected culpability for the offense based on the lack of an essential element of the crime; and, that the risk of moving the vehicle was at least as great as the harm Appellant was purportedly seeking to avoid and there were other, safer, measures that could be taken.

Ultimately, the court held it would be within the jury's province to acquit if there was some evidence of imminence or urgency, but the facts do not reflect such a situation. Justice Benavides dissented and faulted the majority for going to great lengths to explain why it believed this evidence was so weak that no reasonable juror could ever reach that conclusion. *Maciel v. State*, ___ S.W.3d ___, No. 13-18-00586-CR, 2023 WL 4003039, at *3-4 (Tex. App.—Corpus Christi–Edinburg June 15, 2023)(*Maciel III*)(Benavides, J., dissenting)(arguing that the majority invaded the province of the jury as the fact finder).

On petition to this Court, Appellant argues that the court of appeals has again substituted its judgment for the jury's, this time on harm. Appellant maintains the court of appeals could not have found the evidence insufficient as a matter of law when this Court held it was enough to raise a jury issue. In the State's petition, the State does not dispute that there are flaws in the court of appeals' reasoning but asserts that its conclusion—not submitting necessity was harmless—was correct. We granted the Appellant's ground for review to determine whether the court of appeals improperly substitute its own judgment for a jury's that was never given the opportunity with proper instruction. We also granted the State's ground for review as to whether the court of appeal's harm analysis should have

considered the unlikelihood that the jury would have reached the necessity issue given the implausibility of the testimony supporting it when viewed against the record as a whole.

We agree that the court of appeals erred in its harm analysis. First, the court erred in relitigating whether Appellant was entitled to a necessity instruction. Second, the court erred in its "some harm" analysis.

### III.     THE NECESSITY STATUTE'S TWO-PRONG TEST

i.      Relitigating whether Appellant was entitled to a necessity instruction was error.

In conducting its harm analysis, the court of appeals first evaluated whether Appellant was entitled to a necessity instruction. *See* Tex. Pen. Code § 9.22. This was unnecessary as we previously decided that Appellant was entitled to said instruction. *See Maciel II*, 631 S.W.3d at 725 (holding that that Appellant was entitled to the instruction because the jury could reasonably infer from her testimony that she had been operating the vehicle and did so because she believed it was immediately necessary to avoid imminent danger and that belief was reasonable). As stated by Justice Benavides in her dissent, "Either the evidence is sufficient to raise an affirmative defense, or it is not, and because the Court of Criminal Appeals has already answered that question, we are constrained by the law of the case doctrine from now concluding that there was 'no evidence' of [Appellant's] necessity defense." *Maciel v. State*, No. 13-18-00586-CR, 2023 Tex. App. LEXIS 4171, *39 (Tex. App.—Corpus Christi-Edinburg June 15, 2023) (Benavides, J., dissenting). We agree.

ii.      Further, the parties agree the court of appeals' analysis is flawed.[1]

First, the court of appeals concluded that because Appellant was intoxicated (i.e., she didn't have "the normal use of mental or physical faculties," *see* Tex. Pen. Code § 49.01(2)(A)), the evidence couldn't support a finding that she had a "reasonable" belief that she was in imminent danger under the necessity statute). Legally, this is equivalent to saying a defendant who is intoxicated is precluded from raising a necessity defense. Nothing in the driving while intoxicated statute indicates that the Legislature sought to eliminate necessity defenses for DWI offenses. *See* PC §§ 49.04; 9.22(3)(conduct justified as necessity if, among other things, "a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear"). This Court in *Maciel II* and other courts of appeals have accepted that DWI defendants aren't precluded from raising necessity. *Wright v. State*, 2010 Tex. App. LEXIS 4893 (Dallas June 28, 2010, no pet.); *Daugherty v. State*, 2019 Tex. App. LEXIS 4163 (Texarkana May 22, 2019, pet. ref'd).

Second, the court of appeals found a "complete absence" of "immediate necessity" or "imminent harm" and pointed to Officer Shaw's testimony that Northgate, the bar district, was typically dead on a Sunday night and that no traffic was on the road at that particular time. The court of appeals neglected, however, other portions of Shaw's testimony. Shaw agreed with Appellant that it was a "dangerous situation, potentially, to have a vehicle just

---

[1] In its Petition for Discretionary Review, the State concedes that, "Drunk people form beliefs all the time, and some of those beliefs are objectively reasonable despite being fueled by alcohol. Intoxication does not legally prevent formation of a subjective belief, and is irrelevant to whether any belief was objectively reasonable."

parked in the middle of the road, stalled out." He agreed that "we do see vehicles coming by" as he was "doing tests and things like that and talking." And he also agreed that people would be leaving Northgate between 1:00 and 2:00 a.m. and that "it's not a good situation, it's a dangerous situation, to have a vehicle in the middle of the road."

Once again, the court below only considered evidence that undermined Appellant's necessity evidence. *See Maciel II*, 631 S.W.3d at 724 (court of appeals "only looked at the evidence which undermined the request for the [necessity] instruction"). By holding that no rational juror could find that it constituted imminent harm, the court of appeals "committed the same error from its previous opinion, focusing on evidence contrary to [Appellant's] necessity defense and every perceived weakness and inconsistency in her testimony," while ignoring any evidence that may have supported it, including evidence of actual vehicles passing by during the stop and Appellant's repeated statements concerning the health of her brother. *Id*. at 39 (Benavides, J., dissenting). As noted by Justice Benavides, "the court of appeals continued to discount the reasonable inferences a jury is entitled to make, positing that because Shaw testified there was no traffic when he arrived on the scene, a car parked in the middle of the road that night did not constitute an imminent danger." *Id*.

IV.    "SOME HARM" ANALYSIS

A trial court's failure to instruct the jury on a confession-and-avoidance defense "is generally harmful because its omission leaves the jury without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense. *Cornet v. State*, 417 S.W.3d

446, 451 (Tex. Crim. App. 2013). But when "a record reveals a risk of harm that is so small that it may properly be characterized as not 'remotely significant,' or where the risk of harm is 'almost infinitesimal,' any harm resulting from the error is only theoretical harm." *French v. State*, 563 S.W.3d 228, 239 (Tex. Crim. App. 2018).

The record reflects that Appellant timely requested an instruction on necessity. Accordingly, the trial court's error in denying the instruction requires reversal so long as there has been "some harm" to Appellant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). When conducting a harm analysis, we may consider four factors: (1) the charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Barron v. State*, 353 S.W.3d 879, 884 (Tex. Crim. App. 2011) (quoting *Almanza*, 686 S.W.2d at 171). "In ascertaining whether there is harm, appellate courts 'focus on the evidence and record to determine the likelihood that the jury' would have concluded that the defense applied had it been given the instruction." *Chase v. State*, 418 S.W.3d 296, 301 (Tex. App.—Austin 2013), *aff'd*, 448 S.W.3d 6 (Tex. Crim. App. 2014) (quoting *Wooten*, 400 S.W.3d at 606).

While we agree that the "some" harm analysis under Almanza was the proper standard of review for the court of appeals to undertake, we disagree with its conclusion that the error did not result in some harm to Appellant.

1. *The Jury Charge*

The first *Almanza* factor requires that we review the trial court's charge in its entirety. Here, the trial court denied Appellant's requested necessity instruction. As such, the jury was not given the opportunity to consider whether the evidence regarding Appellant's intoxicated driving could be legally justified as a necessity, and thus they were not provided the option to acquit her if they found that she reasonably believed that operating the vehicle was immediately necessary to avoid danger. *Cornet*, 417 S.W.3d at 451; *see also Villarreal*, 453 S.W.3d at 433; *Dugar v. State*, 464 S.W.3d 811, 822 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (explaining that when the self-defense "instruction was taken away from the jury, appellant was left without his only defensive theory, making his conviction a virtual inevitability").

As stated above, the charge did not instruct the jury on any justification defenses. The jury was asked to determine only whether Appellant was guilty of driving while intoxicated. The charge gave one theory on which the jury could convict:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 1ST DAY OF FEBRUARY, 2016, in Brazos County, Texas, the Defendant, BETHANY GRACE MACIEL, did then and there while intoxicated by not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body or by having an alcohol concentration of 0.08 or more, drive or operate a motor vehicle in a public place in said County and State, you will find the defendant guilty as charged. Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the Defendant, BETHANY GRACE MACIEL, not guilty.

Because necessity is a justification, a jury that believed her necessity defense would be obligated to acquit Appellant of the offense. Without the necessity defense in the jury charge, the jury would be obligated to convict her. However, according to the court of

appeals, Appellant's defense was not based solely on necessity, so there was no substantial risk of harm from the denial of the necessity instruction. In other words, when defense counsel pivoted from the necessity defense during closing argument and instead rejected culpability for the offense based on the lack of an essential element of the crime, the jury was not left "without a vehicle by which to acquit" her. We disagree.

In *Dugar*, *supra*, after the defendant was denied a self-defense instruction, counsel "was left to argue" in closing that Dugar did not act with the requisite *mens rea. Id*. at 821. The Fourteenth Court of Appeals noted that Dugar "pitched this case as a question of self-defense, and he admitted to the conduct that formed the basis of the offense in order to receive a self-defense instruction. When that instruction was taken away from the jury, appellant was left without his only defensive theory, making his conviction a virtual inevitability." *Id*. at 822-23. The court of appeals concluded the trial court's error resulted in harm.

Appellant's case is similar. After Appellant was denied a necessity instruction, defense counsel was "left to argue" that she did not operate the vehicle. Nothing suggests from Appellant's opening that she intended to argue both that her conduct was justified by necessity and that she did not "operate" a vehicle. Instead, it was quite the contrary, and as we noted in *Maciel* II, Appellant's testimony was an admission to the commission of driving while intoxicated, so there was little doubt that Appellant operated the vehicle. Therefore, we disagree with the court's opinion below that the defendant raised alternative defensive theories. Because Appellant had only a single defense and there was no necessity

instruction in the charge, nor were there any other instructions that clarified this issue, Appellant was left without a defensive theory and the jury was without a vehicle on which it could acquit. This charge error related to a contested issue at trial and Appellant's trial strategy. As such, this factor weighs in favor of a finding that Appellant was harmed by the error.

2. *The State of the Evidence*

The second *Almanza* factor focuses on the evidence presented at trial. Appellant's defense at trial was that she was operating the vehicle for the sole purpose of attempting to safely move it from the middle of the road. A significant portion of the testimony focused on where the vehicle was stopped in the road and whether the vehicle was in a dangerous location in the road. Officer Shaw agreed with defense counsel on two occasions that having a stalled vehicle parked in the middle of the road is a dangerous situation. Appellant also testified that she was scared because the vehicle was parked in the middle of the road. She was also concerned for her brother, who was physically ill.

Further, the testimony regarding her brother driving from the parking garage to the point where the vehicle was stopped was not controverted by any other testimony and was supported by a prior consistent statement testified to by Kendyll Holmes that the day after her arrest, the Appellant, "told me that they left Northgate, Jonathan was driving her car, and then they pulled over when he started to get sick, and that they had switched seats." Bodycam and patrol vehicle footage from Officer Shaw admitted into evidence showed at the time of the stop, multiple cars passing by at high rates of speed on either side of the

Appellant's vehicle. In State's Exhibit No. 3, the audio-video from Officer Shaw's body camera, Appellant told the officer that she was only trying to move the vehicle off the road out of fear for her and her passengers' safety, and that she was concerned for her brother who had become physically ill while driving. At trial, Appellant testified similarly.

Based on this evidence, we previously concluded that this testimony, along with other evidence, was legally sufficient for a jury to determine "that [Maciel] operated a motor vehicle while intoxicated because she reasonably believed that doing so was immediately necessary to avoid imminent danger." *Maciel II*, 631 S.W.3d at 725. But on remand, the court of appeals seemingly ignores what we said in *Maciel II*. Instead, the court of appeals finds that the evidence, when viewed in its totality, contradicts the plausibility of driving while intoxicated under these circumstances when there is a lack of specific and imminent harm. In other words, the court of appeals just does not buy Appellant's defense. This is error for two reasons.

First, we have already rejected that assertion by concluding that the jury should have been instructed on necessity, and thus permitted to consider the justification.

Second, a defendant is entitled to an instruction on any defensive issued raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the trial court views the credibility of the defense. *Maciel*, 631 S.W.3d at 723 (quoting *Celis v. State*, 416 S.W.3d 419, 430 (Tex. Crim. App. 2013)).

Here, the issue is necessity. Appellant and Officer Shaw testified to facts that, if believed, would have supported her necessity claim. But the appellate court should not

weigh in on this fact-specific determination, as that is a function reserved for a properly instructed jury. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Therefore, once the necessity argument was made, the question should be left to the jury to decide. *Reeves*, 420 S.W.3d at 820. The credibility of the defense is a determination for the jury to make. *See Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App 2023).

We cannot know for certain whether the jury would have accepted Appellant's claim of necessity had that issue been submitted. But it is not for an appellate court to decide whether that claim was credible. Given that the defense's trial strategy focused exclusively on the necessity defense (if she was operating a motor vehicle, it was only for the purpose of necessity), the exclusion of a necessity instruction in the charge weighs in favor of some harm.

3. *The Arguments of Counsel*

The third *Almanza* factor pertains to the arguments of trial counsel. In considering this factor, we must determine whether any statements made by the State, Appellant's trial counsel, or the trial court exacerbated or ameliorated the complained-of charge error. *Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015).

Here, neither the State's nor Appellant's trial counsel's closing arguments focused on necessity. The court of appeals concluded that because Appellant failed to argue necessity in her closing, this factor weighed against a finding of harm. We disagree for two reasons. First, we agree that counsel did not use the word "necessity" in closing. However, counsel did argue, "Even if you do believe that [Appellant operated the vehicle], you can

also still consider the motive. She wasn't trying to operate the vehicle to drive it. She was trying to operate the vehicle to get it off the road. That matters. It should matter. It does matter.". In other words, Appellant had a reason for driving while intoxicated. While this might not be a clear necessity argument, it is a justification as to why Appellant committed the offense.

Second, a defendant need not continue to argue a legal justification in closing when the jury instructions do not permit the jury to consider that justification in returning a verdict. According to the court of appeals, counsel should have continued to admit the defendant's guilt and advocate the necessity defense. However, this Court's decision in *Rogers v. State* suggests that, at least with respect to confession and avoidance defenses, a trial court's ruling denying an instruction on such a defense plays a part in a harm analysis. 550 S.W.3d 190, 192, 194 (Tex. Crim. App. 2019)(holding that those rulings are other relevant information that may inform the harm analysis and should be considered as such).

In *Rogers*, the appellant went to trial on aggravated assault and burglary of a habitation charges. He wanted to raise self-defense and necessity, but the trial court granted the State's motion in limine prohibiting the defense from mentioning justification defenses. The court of appeals found that in the burglary case the trial court's failure to instruct the jury on self-defense and necessity, if error, was harmless. This Court reversed. It noted that the court of appeals held that the appellant's compliance with the trial court's ruling (his failure to rely on self-defense and necessity before the jury) weighed against a finding of harm.

Here, explicitly arguing a justification defense during closing argument would have been objectionable on multiple grounds, including an inappropriate request for jury nullification. *Ramos v. State*, 934 S.W.2d 358, 367 (Tex. Crim. App. 1996)("Jury nullification is not an argument that a defendant is entitled to make because there is no constitutional right to jury nullification and because there is no constitutional requirement that the jury be instructed on nullification."). Therefore, the mention of necessity would likely have drawn an objection from the State, ire from the trial court, and confusion from the jury. As the dissent points out, jury nullification is not an argument a defendant is entitled to make. *Maciel* III, at \*45 (Benavides, J., dissenting). Appellant should not be penalized for "giving due respect to the trial court's ruling, which essentially required her to abandon her necessity defense during closing arguments." *Id*.; *see also Rogers*, 550 S.W.3d at 194.

4. *Other Relevant Information in the Record*

Finally, the fourth *Almanza* "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether Appellant was harmed as a result of the complained-of charge error. *Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171. Above, we have outlined the evidence that is pertinent to our harm analysis. Because there is no other information in the record that would inform our analysis, this factor neither weighs in favor of nor against a finding of harm.

5. *The Almanza Factors Considered Together*

"[A] properly preserved error will require reversal as long as the error is not harmless." *Id*. In the light of the foregoing considerations and the standard of review that we must employ, we conclude that the omission of Appellant's requested necessity instruction resulted in "some harm" and constitutes reversible error. Although the jury had to decide which version of events to believe—the State's or Appellant's—it nonetheless could have convicted Appellant under the charge it received even if it believed Appellant. While reasonable minds may differ, it was for the jury, not the trial court, to decide whether Appellant reasonably believed that operating the vehicle while intoxicated was immediately necessary to avoid imminent danger.

Appellant admitted to attempting to operate the vehicle, and the jury could have found that she did so while intoxicated. Because the trial court refused to submit Appellant's requested necessity instruction, the jury had no alternative to consider, and thus determine, whether her conduct was justified under the circumstances. *See Cornet*, 417 S.W.3d at 451. Given the evidence in the record that supports Appellant's justification, we are persuaded that the jury should have been able to make that determination.

VII. CONCLUSION

We have determined that Appellant suffered some harm as a result of the trial court's failure to include a necessity instruction in the jury charge. For these reasons, we reverse the judgment of the trial court and remand for a new trial.

Delivered: May 29. 2024

Publish