# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00564-CR

**Santiago Vasquez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 264TH DISTRICT COURT OF BELL COUNTY
### NO. 77382, THE HONORABLE PAUL L. LEPAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Santiago Vasquez was convicted of murdering John Seth, Jr., and was sentenced to fourteen years' imprisonment. *See* Tex. Penal Code § 19.02. On appeal, Vasquez challenges the sufficiency of the evidence establishing his guilt. We will affirm the trial court's judgment of conviction.

## BACKGROUND

Vasquez was charged with killing his neighbor Seth, whom he had lived next door to for years. During the trial, the State and Vasquez called multiple witnesses.

One of the State's witnesses was Vasquez's next-door neighbor. In her testimony, the neighbor explained that before the incident in question, she saw Vasquez in his front yard sitting on a stool, sharpening a knife, and monitoring his water sprinkler. Further, the neighbor stated that she saw Vasquez about two hours later and shortly before the incident, that he was

still sharpening the knife while sitting on the stool, and that she had never seen Vasquez sharpen a knife outside before.

The State also called Tammy Wolfe who was an eyewitness. In her testimony, Wolfe explained that she was remodeling a home in a cul-de-sac that faced Vasquez's and Seth's homes. While taking a break in front of the house, Wolfe saw Seth near his mailbox holding what appeared to be mail in his hands and turning to walk back toward his house and also saw Vasquez using a cane to walk from his garage through his yard toward Seth.[1] When Vasquez reached Seth in front of Seth's property, he appeared to be angry based on his tone and on how he was moving his hand, and Wolfe could hear him yelling at Seth while Seth "just st[ood] there." After yelling at Seth, Vasquez hit Seth with his cane, which caused Seth to lose his balance and move backwards. Vasquez then moved forward to hit Seth with the cane again and caused Seth to fall to the ground near a sidewalk in front of Seth's home. When describing this exchange, Wolfe explained that Seth stayed in front of his house during the whole incident, never moved toward Vasquez, and did not act aggressively. Further, Wolfe testified that Vasquez shot Seth multiple times while Seth was getting up and that Seth fell to the ground, causing the papers in his hand to scatter. Wolfe testified that after shooting Seth, Vasquez looked around before returning to his property and making a phone call. Wolfe also explained that she had a clear and unobstructed view of the incident, and photographs were admitted showing her view of the houses from the front yard of the home that she was helping remodel.

During the trial, some law-enforcement officers testified that Vasquez was outside on his cell phone when they arrived and that a search of Vasquez revealed that he had on his

---

[1] Wolfe did not know and had not met either Seth or Vasquez, but she described Seth as an African American man and Vasquez as a white man. Wolfe also identified Vasquez in the trial court as the white man whom she saw on the day of the offense.

2

person a revolver, a small caliber handgun, a fully loaded magazine for the handgun, "a speed loader for the revolver," and a hunting knife with a blade that was more than six inches long. One officer explained that there were no handguns or other weapons found near Seth's body and that Vasquez stated that his hand had been injured during the confrontation. Another officer testified that Seth's body was in front of his house and that Vasquez's wrist was swollen. Another officer explained that the police had previously responded to the area after Seth called 911 to report that Vasquez broke his window with a rock and was playing music too loudly. At trial, the medical examiner testified that Seth had been shot two times in the chest and abdomen, that he died from those wounds, and that he had recent bruises and blunt force injuries on his left forearm, left hand, and right hand.

In his case in chief, Vasquez elected to testify and stated that he was retired but had been in the army for nearly thirty years and was previously employed as a security officer, a reserve police officer, and a jailer. Regarding the day of the offense, Vasquez testified that he was outside watering his lawn and that he was sharpening the knife so that he could use it at an upcoming barbecue. Next, Vasquez testified that Seth approached him, started an unpleasant conversation with him, and then made multiple movements towards him, and he explained that he raised his cane up to stop Seth from advancing. Further, Vasquez related that Seth yanked the cane out of his hand and then hit him with the cane two or three times. Additionally, Vasquez stated that he held his hand up to protect himself and that the cane struck his hand. Vasquez also testified that he was afraid for his life, that he carried so many weapons to protect himself from Seth due to Seth's previous threats, that one of his guns fell out of his pocket during the struggle with Seth, that Seth tried to grab it, that he picked up the weapon before Seth could grab it, and that he shot Seth two times in self-defense. Moreover, Vasquez testified that he yelled for help,

3

called his lawyer right after the shooting, and was on the phone with his lawyer when the police arrived. Following Vasquez's testimony, his attorney testified that Vasquez had previously hired him to sue Seth for harassment, called him right after the offense, had a large bruise on his left forearm after he was arrested, and stated that he put his hands up to protect himself when Seth hit him with his own cane.

At trial, the State and Vasquez called the following expert witnesses: Dr. John Fabian and Dr. Maureen Burrows. In his testimony, Dr. Fabian explained that Vasquez had a history of post-traumatic stress disorder (PTSD) from his prior military service. Further, Dr. Fabian related that Vasquez was paranoid, suspicious, hypervigilant, and aggressive. Additionally, Dr. Fabian testified that Vasquez had PTSD at the time of the offense and that his mental deficits and disorders made him "perceive[] a need to defend himself" and view Seth as a threat.

In her testimony, Dr. Burrows stated that Vasquez had been diagnosed with PTSD before the incident. Additionally, Dr. Burrows explained that Vasquez was "easily upset by perceived slights or insults," that he holds "grudges," that anger and aggression "play a marked role in his day-to-day functioning," that he has difficulty controlling his anger, that he expresses his anger by making threats to assault others, that he has "a history of aggression and hostility and poor anger control," and that he has gotten into fights with others in the past. Dr. Burrows also related that Vasquez stated that the origin of the conflict was that Seth spit on Vasquez's mailbox earlier in the day and on other occasions and that Vasquez admitted that he was angry at Seth for spitting on the mailbox and was "tired of it." Moreover, Dr. Burrows explained that Vasquez's description of the events changed over time with each new version alleging that Seth

4

was more aggressive than in the version before and that he "manipulated" and embellished his description of the incident "to justify his actions" and make him seem less culpable.

After considering the evidence presented at trial, the jury convicted Vasquez of murder, implicitly rejecting his self-defense claim.

## DISCUSSION

On appeal, Vasquez asserts that the evidence is insufficient to support his "conviction because a rational jury could not reject his claim of self-defense." On the contrary, Vasquez contends that the evidence established that he "acted reasonably in shooting Seth to protect himself from Seth's use or attempted use of unlawful deadly force" and that his "defensive action was immediately necessary to protect himself against" Seth who was bigger than him. More specifically, Vasquez urges that there was a "history of bad blood" between Seth and him, that the two engaged in a hostile conversation before the shooting, and that Seth made an aggressive movement towards him. Further, Vasquez contends that his injuries were "consistent with a defensive effort—warding off a blow from Seth—as well as his version of events." Moreover, Vasquez urges that Wolfe's eyewitness testimony "must be taken with a grain of salt" because of how far away she was from where the incident occurred and because she did not fully explain how he and Seth ended up in front of Seth's house. Additionally, Vasquez highlights the portions of Dr. Fabian's testimony stating that Vasquez suffered from PTSD and that Vasquez perceived a threat and reacted in self-defense based on his circumstances and life experiences.

Under the Penal Code, a person commits murder if he "intentionally or knowingly causes the death of an individual." Tex. Penal Code § 19.02(b)(1). The Penal Code also

5

specifies that "[i]t is a defense to prosecution that the conduct in question is justified under" chapter nine. *Id.* § 9.02. One justification listed in that chapter is self-defense, which provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a). "The use of force against another is not justified . . . in response to verbal provocation alone" or "if the actor provoked the other's use or attempted use of unlawful force, unless . . . the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter" and unless "the other nevertheless continues or attempts to use unlawful force against the actor." *Id.* § 9.31(b)(1), (4).

Moreover, the use of deadly force is only justified in the circumstances set out by the Penal Code. *Id.* § 9.31(d). Of significance to this case, "[a] person is justified in using deadly force against another . . . if the actor would be justified in using force against the other" as set out above and "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a). "A person has the right to defend himself from apparent danger to the same extent as he would if the danger were real." *Dugar v. State*, 464 S.W.3d 811, 818 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (quoting *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996)). Accordingly, "under certain circumstances, a person may use deadly force against another, even if the other was not actually using or attempting to use unlawful deadly force." *Id.* "The reasonableness of a person's belief that force is immediately necessary is viewed from the person's standpoint at the time that he acted." *Id.* "[A] 'reasonable belief' is one that would be held by an ordinary and prudent person." *See Mays v. State*, 318 S.W.3d 368,

6

385 (Tex. Crim. App. 2010); *see also Rodriguez v. State*, No. 13-16-00396-CR, 2018 WL 2252882, at *5 (Tex. App.—Corpus Christi May 17, 2018, no pet.) (mem. op., not designated for publication) (explaining that "self-defense supported by a paranoid delusion is not a recognized defense in Texas").

"Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Id.* "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id.* "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id.*, and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Courts also must bear in mind that "direct and circumstantial evidence are treated

7

equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

"The defendant has the initial burden of production and must bring forth some evidence to support" his claim of self-defense. *See Dearborn v. State*, 420 S.W.3d 366, 372 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "Once the evidence is produced, the State bears the burden of persuasion to disprove the defense." *Id.* "This burden does not require the production of additional evidence rebutting self-defense; it requires the State to prove its case beyond a reasonable doubt." *Id.* "When the trier of fact finds the defendant guilty, there is an implicit finding rejecting the defendant's self-defense theory." *Id.* "Because the State bears the burden of persuasion to disprove a" claim of self-defense "by establishing its case beyond a reasonable doubt, we review . . . sufficiency challenges to the . . . rejection of such a defense under" the legal-sufficiency standard. *See Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *cf. Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (providing that "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense").

When addressing a claim that the evidence was legally insufficient to support the rejection of a self-defense claim, appellate courts "examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a

reasonable doubt (1) the essential elements of the alleged offenses, and (2) against appellant on the self-defense issue." *Dearborn*, 420 S.W.3d at 372. The trier of fact "is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Id.* at 372-73. Accordingly, "[t]he trier of fact is free to accept or reject defensive evidence on the issue of self-defense," and appellate courts "presume the trier of fact resolved any conflicting inferences and issues of credibility in favor of the judgment." *Id.* at 373. "Moreover, when there is evidence, if believed, to support a claim of self-defense, but other evidence, if believed, to support a conviction, an appellate court will not weigh in on this fact-specific determination as this is a function of" the trier of fact. *See McFadden v. State*, 541 S.W.3d 277, 285 (Tex. App.—Texarkana 2018, pet. ref'd).

As set out above, Vasquez did testify that Seth was the instigator, that he was acting in self-defense, that he believed that his life was in danger, and that he sustained injuries while acting in self-defense, and evidence was presented demonstrating that he had an injury to at least one of his arms and had been diagnosed with and was suffering from PTSD. However, the jury also heard other evidence pertaining to Vasquez's guilt. Wolfe testified that she had a clear view of the incident and saw Vasquez approach Seth while he was carrying what appeared to be mail in his hands and was walking from near the mailbox towards his house, and the jury could have reasonably inferred that Vasquez approached Seth while he was checking his mailbox. Further, Wolfe stated that she observed Vasquez yelling at Seth and then hitting Seth multiple times with his cane before shooting Seth several times. Moreover, Wolfe testified that Seth "just st[ood] there," did not advance or take any aggressive action, and never left the area in front of his property. Consistent with Wolfe's description, the medical examiner testified that

9

Seth had fresh bruises on his arms and hands in addition to the two gunshot wounds that resulted in his death.

The jury was charged with resolving conflicts in the evidence. Moreover, when resolving these conflicts, the jury was aided by the testimony from Dr. Burrows indicating that Vasquez had purposely changed his story regarding the offense to make Seth seem more aggressive and to make himself seem less culpable. Similarly, the jury was aided by the testimony from Dr. Burrows indicating that Vasquez had a history of past aggressive actions, holds grudges for perceived slights, and was angry at Seth on the day in question because Seth allegedly previously spit on his mailbox. Moreover, when assessing Vasquez's intent, the jury could rely on the evidence establishing that Vasquez approached Seth while Seth was either on or in front of his property and that Vasquez was seen sharpening a hunting knife over an extended period of time before approaching Seth with that same weapon in his waistband and while also carrying two guns in his pocket as well as extra ammunition. Furthermore, given Wolfe's testimony, the jury could reasonably have inferred that Vasquez's injuries were either of his own making when he used his cane to attack Seth or were caused by something other than Seth hitting him with a cane.

Viewing the evidence in the light most favorable to the verdict, the jury could have reasonably concluded that Vasquez intentionally or knowingly caused the death of Seth by shooting Seth and that Vasquez did not reasonably believe that the use of deadly force was necessary to protect himself from Seth's use or attempted use of unlawful deadly force and, therefore, rejected the self-defense claim. *See Hill v. State*, 99 S.W.3d 248, 253 (Tex. App.—Fort Worth 2003, pet. ref'd); *see also Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994) (explaining that jury is free to accept or reject any or all evidence from either party); *Heng*

10

*v. State*, No. 01-04-00450-CR, 2006 WL 66461, at *4 (Tex. App.—Houston [1st Dist.] Jan. 12, 2006, pet. ref'd) (mem. op., not designated for publication) (determining that evidence was sufficient to support rejection of self-defense claim where evidence showed that defendant armed himself, that victim had no weapon, and that defendant shot victim multiple times). Accordingly, we conclude that the evidence is sufficient to support the jury's rejection of Vasquez's self-defense claim and to support his conviction.

For these reasons, we overrule Vasquez's issue on appeal.

## CONCLUSION

Having overruled Vasquez's issue on appeal, we affirm the trial court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed: January 14, 2021

Do Not Publish