

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00010-CR

CHRISTOPHER TAYLOR, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 167th District Court
Travis County, Texas[1]
Trial Court No. D-1-DC-19-900111, Honorable Dayna Blazey, Presiding

December 30, 2025

## OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

This case comes down to a single, unavoidable question: When an elevator door opens to reveal a man holding a knife who turns toward officers and advances, may an officer reasonably believe deadly force is necessary to prevent an imminent murder? The jury concluded no. The record and the governing law compel the opposite. Following a

___

[1] This cause was originally filed in the Third Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. TEX. GOV'T CODE § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3; *Mitschke v. Borromeo*, 645 S.W.3d 251 (Tex. 2022).

plea of not guilty, Appellant, Christopher Taylor, was found guilty by a jury of deadly conduct by discharging a firearm.[2]  By his two issues, he challenges his conviction claiming: (1) there was insufficient evidence to disprove his affirmative defenses of self-defense and defense of another; and (2) the trial court erroneously determined he was ineligible for a suspended sentence because it failed to make a deadly weapon finding in the judgment and failed to consider the full range of punishment.  We reverse and acquit.

## BACKGROUND

In 2019, Appellant, then an Austin Police Department officer, and three fellow officers responded to a 911 call at a downtown Austin condo building.  A resident, Mauris DeSilva, had been seen roaming the halls with a knife to his throat and threatening suicide.  Building management, familiar with DeSilva's schizophrenia and other mental health issues, told officers this was not the first such incident.  Front desk staff informed the officers that DeSilva was on the fifth floor with a large kitchen knife, and security cameras confirmed he was walking toward the elevator.

The four officers took the elevator to the fifth floor.  Their plan was for one officer to deploy a taser, two—including Appellant—to use firearms if necessary, and the fourth officer to attempt physical restraint.

Bodycam footage showed that when the elevator doors opened, DeSilva was facing a hallway mirror with the knife at his throat.  He turned and approached the officers. They had not designated a single officer to issue commands, and all four shouted orders, including "show me your hands" and "drop the knife."  DeSilva lowered the knife to his

---

[2] TEX. PENAL CODE § 22.05(b)(1).

2

side but continued forward. Almost simultaneously, the taser officer fired, and the two officers with drawn weapons fired as well. Appellant fired five shots, and the other officer fired twice. DeSilva died at the scene.

Appellant was indicted for deadly conduct with a firearm and pleaded not guilty, asserting self-defense and defense of others. Fellow officers testified they would not have acted differently. An expert testified that a knife-wielding attacker within 21 feet could injure an officer before the officer could fire, and therefore Appellant's use of deadly force was justified. The Austin Police Department's Special Investigations Unit concluded Appellant's actions did not warrant criminal charges. The jury nevertheless found Appellant guilty. Appellant elected for the trial court to assess punishment, and the court sentenced him to two years' imprisonment.

## APPLICABLE LAW

A person commits deadly conduct if he:

(1) knowingly

(2) discharges a firearm at or in the direction of

(3) one or more individuals.

TEX. PENAL CODE § 22.05(b)(1). In addition, "recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." § 22.05(c).[3]

---

[3] The Legislature recently amended this statute to give protections to peace officers from this statute. Effective September 1, 2025, "[t]he presumption under this subsection does not apply to a peace officer engaged in the lawful discharge of the officer's official duties" and subsection (b)(1) does not apply to a peace officer if he "(1) was engaged in the actual discharge of the officer's official duties; and (2)

3

A party may avoid prosecution if he is able to prove his conduct was justified. § 9.02.   Using force in self-defense is justified "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."  § 9.31(a).  The force used may be deadly force "when and to the degree the actor reasonably believes the deadly force is immediately necessary:

> (A) to protect the actor against the other's use or attempted use of unlawful deadly force; or
>
> (B)  to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery."

§ 9.32(a)(2).  The use of force and deadly force is presumed to be reasonable if:

> (1) the actor "knew or had reason to believe that the person against whom the deadly force was used . . .   was committing or attempting to commit [aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery];
>
> (2) did not provoke the person against whom the force was used; and
>
> (3) was not otherwise engaged in criminal activity[.]"

§ 9.32(b).

The Texas Penal Code dictates when and how a defensive presumption operates:

> Sec. 2.05.  PRESUMPTION.
>
>    ***
>
> (b) When this code or another penal law establishes a presumption in favor of the defendant with respect to any fact, it has the following consequences:

---

reasonably believed the discharge of the officer's firearm was justified under Chapter 9 [of the Texas Penal Code]."  § 22.05 (c), (f) (West 2025) [Act of June 17, 2025, 89th Leg., R.S., Ch. 1146 (S.B. 1637), § 1]. However, the offense took place in 2019, and Appellant was not entitled to receive the benefit of these amendments.

4

(1) if there is sufficient evidence of the facts that give rise to the presumption, the issue of the existence of the presumed fact must be submitted to the jury unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact; and

(2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption, that:

(A) the presumption applies unless the state proves beyond a reasonable doubt that the facts giving rise to the presumption do not exist;

(B) if the state fails to prove beyond a reasonable doubt that the facts giving rise to the presumption do not exist, the jury must find that the presumed fact exists;

(C) even though the jury may find that the presumed fact does not exist, the state must prove beyond a reasonable doubt each of the elements of the offense charged; and

(D) if the jury has a reasonable doubt as to whether the presumed fact exists, the presumption applies and the jury must consider the presumed fact to exist.

TEX. PENAL CODE § 2.05(b).

## STANDARD OF REVIEW

In a sufficiency challenge, the only standard a reviewing court should apply is whether a rational jury could have found each essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). When reviewing the sufficiency of the evidence, we consider all evidence, direct and circumstantial and whether properly or improperly admitted, and view it in the light most favorable to the verdict. *Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023). In doing so, we compare the statutory elements as defined by a hypothetically correct jury charge. *Id.* The trier of fact is the sole judge of the credibility and weight to be attached

5

to the evidence. *Id.* When the record supports conflicting inferences, we presume the trier of fact resolved those conflicts in favor of the verdict and defer to that determination. *Id.*

In a claim of self-defense or defense of third persons that would justify a defendant's use of force against another, the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues. *Braughton v. State*, 569 S.W.3d 592, 608–09 (Tex. Crim. App. 2018) (citing *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991)). The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue. *Id.* (citing *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013)). By contrast, the State's burden of persuasion "is not one that requires the production of evidence; rather it requires only that the State prove its case beyond a reasonable doubt." *Id.* (quoting *Zuliani*, 97 S.W.3d at 594). Thus, "[i]n resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted [A]ppellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against [A]ppellant on the self-defense issue beyond a reasonable doubt." *Id.* (quoting *Saxton*, 804 S.W.2d at 914) (insertions original).

ANALYSIS

Appellant's first issue is dispositive of this appeal. He argues the evidence was legally insufficient for the State to disprove his affirmative defense of justification beyond a reasonable doubt. We agree.

The State's response to issue one is the following: (1) Appellant admitted the elements of deadly conduct; (2) the statutory presumption of reasonableness did not apply; and (3) a rational jury could have rejected Appellant's claims of self-defense and defense of others. We address each contention in turn.

**(1) Appellant admitted the elements of deadly conduct**

Both the State and Appellant stipulated at trial the only contested issue was whether Appellant acted with justification, either in self-defense or in defense of his fellow officers. There was no argument as to whether Appellant pointed his weapon at DeSilva and knowingly discharged it. We agree with the State, the only disputed factual issue at trial was whether Appellant's conduct was justified because he acted in self-defense or defense of a third person.

**(2) Entitlement to the Presumption vs. Overcoming the Presumption**

To be entitled to the submission of the presumption of reasonableness in the use of deadly force, the trial court had to determine there was sufficient evidence giving rise to the presumption. § 2.05(b)(1). Once the determination is made the presumption instruction should be given, the jurors are charged that "the presumption applies unless

the state proves beyond a reasonable doubt that the facts giving rise to the presumption do not exist[.]" § 2.05(b)(2)(A).

In this case, Appellant had to prove the following facts giving rise to the presumption:

(1) Appellant knew or had reason to believe DeSilva was committing or attempting to commit murder;[4]

(2) Appellant did not provoke DeSilva; and

(3) Appellant was not engaged in criminal activity at the time.

§ 9.32(b). It is uncontested Appellant did not provoke DeSilva nor was he engaged in criminal activity at the time he discharged his weapon. Therefore, the only fact in dispute is whether Appellant knew or had reason to believe DeSilva was attempting to commit murder when he shot him.

The State argues Appellant was not entitled to the presumption because no evidence showed DeSilva had the intent to commit murder. Section 9.32(b)(1) does not require proof of DeSilva's actual mens rea to commit murder. The inquiry is whether *Appellant* reasonably believed DeSilva was committing or attempting to commit murder at the moment deadly force was used. The State's focus on the absence of evidence of DeSilva's subjective intent misses the mark.

---

[4] § 9.32(b)(1)(C): "was committing or attempting to commit an offense described by Subsection (a)(2)(B)." The offenses listed in Subsection (a)(2)(B) are aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. We use the term "murder" because it is the only offense among those listed that the evidence could plausibly implicate here.

The State also relies on a brief exchange during cross-examination of Appellant's expert, Mark David Sawa, asserting Sawa "admitted" DeSilva was not committing murder. Viewed in context, the testimony does not carry the significance the State assigns to it.

Sawa clarified that the questions posed to him—asking whether DeSilva was "at any time imminently committing the offense of murder" or "actively attempting to commit murder"—did not form the basis of his opinion. His answers were responsive to the phrasing of the questions, not to the statutory standard. Section 9.32(b)(1) does not ask whether DeSilva was *actively* or *imminently* committing murder in a lay sense; it asks whether Appellant reasonably *believed* he was attempting murder. In short, the expert's testimony neither defeats Appellant's entitlement to the presumption nor satisfies the State's burden to overcome it once the presumption was submitted to the jury.

**(3) Sufficiency of the Evidence**

The question before us is not whether different tactical decisions could have been made, nor whether this tragic encounter might have ended differently. The question is whether, viewing the evidence in the light most favorable to the verdict, the State met its burden of persuading the jury beyond a reasonable doubt that Appellant did not reasonably believe deadly force was immediately necessary at the moment he fired his weapon. *See Braughton*, 569 S.W.3d at 611.

*A. The Critical-Moment Inquiry*

Justification is assessed based on the circumstances confronting the defendant at the moment deadly force is used, not on events that occurred before or after that moment. "The reasonableness of a person's belief that force is immediately necessary is viewed

from the person's standpoint at the time that he acted." *Smith v. State*, No. 03-23-00500-CR, 2025 Tex. App. LEXIS 6118, at *1 (Tex. App.—Austin Aug. 14, 2025) (mem. op.), *pet. ref'd*, 2025 Tex. Crim. App. LEXIS 835, at *1 (Nov. 6, 2025) (citing *Dugar v. State*, 464 S.W.3d 811, 818 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). "[A] 'reasonable belief' is one that would be held by an ordinary and prudent person." *Id.* (citing *Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010)). Accordingly, our analysis turns on what the evidence showed at the instant Appellant discharged his service weapon and whether the State disproved Appellant's justifications beyond a reasonable doubt based on that evidence.

### B. The State's Sufficiency Argument

Before examining the evidence at the critical moment, it is important to identify what the State contends permitted the jury to reject Appellant's justification defenses. The State's sufficiency argument does not depend on proof that DeSilva was unarmed, stationary, or fully compliant. Rather, the State argues that conflicting testimony, particularly from Officer Cast—the officer using the taser—and Appellant's expert, Sawa, combined with surrounding circumstances and credibility concerns, allowed a rational jury to conclude Appellant did not reasonably believe deadly force was immediately necessary.

Central to the State's argument is Officer Cast's testimony regarding DeSilva's movements in the elevator. Although Cast testified that he perceived DeSilva as attempting to commit murder, the State highlights other portions of Cast's testimony in which he stated that DeSilva took only one or two steps toward the officers, rather than aggressively rushing them. The State also emphasizes Cast's acknowledgment that, at

10

certain points, DeSilva was holding the knife to his own throat and was not pointing it directly at the officers or the camera. According to the State, this testimony permitted the jury to reject Appellant's justification defenses.

The State also relies heavily on the testimony of Sawa to argue that the jury could rationally find against justification. Although Sawa ultimately opined that the shooting was justified, the State emphasizes that Sawa conceded DeSilva's knife, "in its manner of use," was not, at certain moments, capable of causing serious bodily injury or death. The State further points to Sawa's difficulty in identifying specific "data points" demonstrating that DeSilva represented a threat to anyone other than himself, despite his opinion that officers had reason to believe DeSilva intended to cause serious bodily injury or death. These concessions, the State argues, allowed the jury to discount Sawa's ultimate conclusions.

Beyond the elevator encounter itself, the State relies on evidence of DeSilva's conduct before the shooting to undermine the reasonableness of Appellant's belief. The State points to testimony from civilian witness Caleb Harris, who encountered DeSilva earlier while DeSilva was holding a knife to his own throat and successfully persuaded him to wait for a different elevator. According to the State, this interaction demonstrated DeSilva's capacity to comply with verbal direction and suggested he was not immediately dangerous to others. The State also emphasizes that Harris attempted to convey this information to officers, but they did not listen.

Similarly, the State relies on testimony from Martin Guardado Contreas, the maintenance employee, to argue that officers failed to gather readily available information or pursue alternative means of securing the scene, such as using the stairs, shutting down

11

elevators, or otherwise preventing DeSilva from reaching common areas. The State contends this evidence supported an inference that Appellant's response was unreasonable under the circumstances.

The State further emphasizes evidence of credibility issues affecting defense witnesses. It points to inconsistencies in Officer Cast's testimony regarding officers' conduct after the shooting, including whether officers immediately rendered aid and whether celebratory gestures occurred. The State also highlights credibility concerns involving Officer Zuniga—the officer assigned to use physical restraint—who initially denied discussing his testimony with Appellant's counsel before later conceding that he had done so. According to the State, these issues allowed the jury to discount testimony favorable to Appellant.

When distilled, however, the State's sufficiency argument rests on three categories of evidence: (1) testimony suggesting DeSilva was not aggressively advancing at certain moments; (2) evidence of DeSilva's earlier conduct and alternative tactics that might have been employed; and (3) credibility disputes regarding defense witnesses. As explained below, none of this evidence, constitutes affirmative proof that Appellant did not reasonably believe deadly force was immediately necessary at the moment he fired.

### C. The State's Evidence Does Not Negate Justification at the Critical Moment

Much of the State's case focused on alleged errors in judgment by Appellant and his fellow officers before or after the critical moment. The State emphasized:

- 911 callers reported DeSilva was holding a kitchen knife to his own neck;

- officers were told DeSilva had a history of mental health issues;

12

- a detective trained in mental health crises arrived only minutes after the shooting; and

- alternative tactics—waiting, using the stairs, designating a single officer to issue commands, deploying a taser, or physically overpowering DeSilva— might have avoided the fatal outcome.

The State also highlighted the number of shots fired, the presence of common areas on the fifth floor, and the officers' conduct after the shooting.

This evidence, even if accepted as true, does not answer the dispositive question. It demonstrates, at most, that different decisions *could* have been made. But "could have," "would have," and "should have" do not disprove justification beyond a reasonable doubt. Tactical misjudgments, hindsight critiques, or failures to optimally respond to a mental health crisis do not render an otherwise reasonable belief in the necessity of deadly force unreasonable.

### *D. Objective Evidence at the Moment Deadly Force Was Used*

Doing precisely what the State urges—setting aside subjective impressions and credibility disputes and relying solely on objective evidence—the record still establishes justification.

The body-worn camera footage shows officers confined inside an elevator as the doors open onto a hallway. DeSilva is initially facing a mirror with a knife to his own throat. When the doors open, DeSilva turns toward the officers, reorients the knife away from himself and toward them, and advances in their direction. The officers have no

13

meaningful avenue of retreat or ability to create distance. DeSilva, by contrast, has the hallway behind him. He does not retreat.

Objectively, the footage does not depict surrender or disengagement. DeSilva does not drop the knife, raise empty hands, freeze, or back away. Instead, he lowers his arm with the knife still in hand and continues to approach officers in close quarters. A four-inch knife wielded, at that distance, presents an immediate and potentially lethal threat.

### E. The Record Does Not Support a Finding of Attempted Compliance

The State also suggests a rational jury could have inferred that DeSilva was attempting to comply. The objective evidence does not support that inference at the critical moment.

While DeSilva initially held the knife to his own throat, justification does not turn on that earlier posture. At the moment deadly force was used, DeSilva turned toward officers, directed the knife away from himself, ignored commands to drop it, and advanced in a confined space. A person attempting to comply does not move toward officers with a knife oriented in their direction. The law does not require officers to interpret such conduct as compliance or to wait until an attack is completed before responding. *See Yalch v. State*, 743 S.W.2d 231, 233 (Tex. Crim. App. 1988).

### F. Credibility Evidence Does Not Salvage the Verdict

This conclusion does not depend on accepting any particular witness's credibility. But even if credibility were considered, the evidence favoring justification was substantial.

14

Two officers in the elevator testified they perceived DeSilva's actions as an imminent attempt to commit murder and would have responded the same way. Appellant's expert testified the shooting was justified. Although the State's expert did not testify, his opinion that the shooting was justified was admitted into evidence. The jury was free to reject that testimony, but once it is set aside—as the State now invites—what remains is the video evidence, which independently supports justification.

### G. Prior Knowledge of DeSilva's Earlier Demeanor Does Not Alter the Analysis

Finally, even assuming Appellant had been told that DeSilva was previously only a danger to himself, that information does not negate justification. Mental health crises are dynamic. A person who is suicidal one moment may pose an immediate threat to others the next. The law evaluates the reasonableness of force based on what the defendant reasonably perceived at the moment deadly force was used—not on earlier assurances or missed opportunities for de-escalation. *Smith*, 2025 Tex. App. LEXIS 6118, at *1.

### H. This Is a Legal Sufficiency Determination, Not a Reweighing of Evidence

Our holding does not substitute this Court's judgment for that of the jury. Rather, it applies the constitutional requirement that a conviction rest on evidence from which a rational jury could find beyond a reasonable doubt that the State disproved Appellant's justifications. *See Jackson*, 443 U.S. at 319. When undisputed objective evidence establishes justification, a verdict resting on speculation cannot stand. *See Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex. Crim. App. 2007).

15

## CONCLUSION

We reverse the judgment of the trial court and render a judgment of acquittal.[5]


Alex Yarbrough
Justice

Publish.

---

[5] Under *Bowen v. State*, we have considered whether the evidence would permit conviction for any lesser or alternative offense absent the charged offense. The record does not support such a result. Because the justification defense applies to the conduct as proved and is not offense-specific under these facts, acquittal is the proper remedy. 374 S.W.3d 427, 431–32 (Tex. Crim. App. 2012).